TEXAS DEPARTMENT OF TRANSPORTATION, Appellant,

v.

Jesus GARZA and Maria Elena Garza, Individually and as Personal Representatives of the Estate of Rolando Garza, Deceased, Appellees.

No. 13–99–759–CV.

Court of Appeals of Texas, Corpus Christi.

May 25, 2000.

Rehearing Overruled Aug. 3, 2000.

Andy Taylor, First Assistant Attorney General, Grady Click, Assistant Attorney General, Gregory S. Coleman, Solicitor General, Office of the Attorney General, John Cornyn, Attorney General of Texas, Linda Eads, Department Attorney General For Litigation, Margie Manzano Corbett, Assistant Attorney General, Transportation Division, S. Kyle Duncan, Assistant Solicitor General, Office of the Attorney General, Austin, for appellant.

Armando P. Duran, Law Offices of Armando P. Duran, Dallas, for appellees.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

FEDERICO G. HINOJOSA, Justice.

This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction filed by appellant, Texas Department of Transportation ("TxDOT"). In a single issue, TxDOT contends the trial court erred in denying the plea. We affirm.

Jesus and Maria Elena Garza ("the Garzas") brought an action against TxDOT after the death of their son, Rolando Garza. On September 26, 1988, a car struck and killed Rolando while he was waiting to cross U.S. Highway 83 in Hidalgo County, Texas to attend Alamo Junior High School. While Rolando stood on the shoulder on the north side of Highway 83 and waited for the traffic to clear, a motorist, traveling west on Highway 83, passed another westbound vehicle. After she returned to her lane of travel, the first motorist lost control of her car and struck and killed Rolando.

The accident occurred near Alamo Junior High School. The school, built in 1986, is situated on the south side of Highway 83. The Garzas alleged that no signs were posted in the vicinity of the school designating the area as a school zone and setting a reasonable speed limit during school hours. The speed limit set for this stretch of highway was 45 mph.

In 1990, the Garzas sued the State of Texas, through TxDOT, for negligence. The Garzas claimed TxDOT committed the following six negligent acts and omissions:

(1) failure to initially place road signs designating the area a school zone;

(2) failure to initially place road signs in the vicinity of the school setting a reasonable speed limit during school hours;

(3) failure to correct the absence, condition or malfunction of road signs within a reasonable time after notice was given;

(4) failure to hold a public hearing to consider the speed limit in the school zone;

(5) failure to notify certain parties of the need for signs designating the area as a school zone; and

(6) failure to notify certain parties of the need for signs setting a reasonable speed limit during school hours.

On September 26, 1991, TxDOT filed a motion for summary judgment based on sovereign immunity and claimed that such immunity was not waived by the Texas Tort Claims Act. The trial court granted the motion and the Garzas appealed to this Court.

In *Garza v. State*, 878 S.W.2d 671 (Tex. App.—Corpus Christi 1994, no writ) (en banc), this Court considered the Garzas' appeal of the summary judgment. After reviewing the Garzas' claims that TxDOT was negligent in failing to place road signs in the school zone area, we determined that the sign placement in this case was discretionary and that summary judgment was proper. *Garza*, 878 S.W.2d at 675; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 1997). We then looked at whether the State negligently failed to correct the absence, condition, or malfunction of traffic or road signs in the vicinity of the school within a reasonable time after receiving notice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(a)(2) (Vernon 1997). The Garzas argued that the existing signs in the area did not set a reasonable speed limit, and that TxDOT should have remedied the problem by placing signs near the school with a lower speed limit. *Garza*, 878 S.W.2d at 675. We concluded that this claim fell within the purview of section 101.060(a)(2) concerning signs already in place. *Id.* Since the Garzas did not allege the absence or malfunction of the signs,

the issue was based on the condition of the signs. *Id.* Following a discussion of "condition," we determined that

> at this stage of the lawsuit, where only the pleadings were filed, we find that it is premature to dismiss this particular claim. On the face of the pleadings, the Garzas have sufficiently stated a cause of action under § 101.060(a)(2). The State, which has the burden of proof, failed to adequately demonstrate that § 101.060(a)(2) is inapplicable as a matter of law.

*Id.* We concluded the trial court erred in granting summary judgment on the section 101.060(a)(2) cause of action and remanded the case to the trial court for further proceedings.[1]

On October 29, 1999, TxDOT filed a Motion to Dismiss for Lack of Jurisdiction asserting sovereign immunity and denying the applicability of section 101.060(a)(2). The trial court denied the motion on November 22, 1999, and this interlocutory appeal ensued.

■ Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex. 1985) (orig. proceeding); *Aldridge,* 400 S.W.2d at 895; *City of Mission v. Ramirez,* 865 S.W.2d 579, 581 (Tex.App.— Corpus Christi 1993, no writ). Section 51.014 of the civil practice and remedies code specifically allows the appeal of various interlocutory orders, including an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp.2000).

■ Subject matter jurisdiction is the authority of a court to decide a case. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *State v. Benavides,* 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied).

■ When considering a plea to the jurisdiction the trial court must determine the issue of subject matter jurisdiction solely by the allegations in the plaintiff's pleading. *Texas Ass'n of Bus.,* 852 S.W.2d at 446; *Caspary v. Corpus Christi Downtown Management Dist.,* 942 S.W.2d 223, 225 (Tex.App.—Corpus Christi 1997, writ denied); *Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction to hear the case. *Texas Ass'n of Bus.,* 852 S.W.2d at 446. We take allegations in the pleadings as true and construe them in favor of the pleader. *Id.* The trial court does not look at the merits of the case. *See Huston v. Federal Deposit Ins. Corp.,* 663 S.W.2d 126, 129 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the trial court must liberally construe the allegations in favor of jurisdic-

---

**1.** We held the trial court properly granted summary judgment on the Garzas' remaining claims: (a) failure to maintain a highway, (b) failure to hold a public hearing, and (c) failure to notify other unspecified parties of the need for changed signage in the school area. *See Garza v. State,* 878 S.W.2d 671, 676 (Tex. App.—Corpus Christi 1994, no writ) (en banc).

tion. *Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 269 (Tex.App.—Fort Worth 1998, no writ). If, however, the petition clearly shows the trial court lacks subject matter jurisdiction, the court must dismiss the case. *Texas Ass'n of Bus.*, 852 S.W.2d at 443. Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

 Sovereign immunity has two component parts—immunity from suit and immunity from liability. *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *Ntreh v. University of Tex. at Dallas*, 936 S.W.2d 649, 651 (Tex.App.—Dallas 1996), *rev'd in part on other grounds*, 947 S.W.2d 202 (Tex. 1997). Immunity from liability protects the state from judgment even if the legislature has expressly consented to the suit. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Immunity from liability does not affect a court's jurisdiction to hear a case. *Davis v. City of San Antonio*, 752 S.W.2d 518, 520 (Tex. 1988). By contrast, immunity from suit bars an action against the state, unless the state expressly consents to the suit. *Federal Sign*, 951 S.W.2d at 405. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. *See Missouri Pac. R.R. Co.*, 453 S.W.2d at 813. Absent the state's consent to suit, a trial court lacks subject matter jurisdiction. *See Federal Sign*, 951 S.W.2d at 403; *Duhart v. State*, 610 S.W.2d 740, 741 (Tex. 1980). If a governmental entity is sued without legislative consent, the trial court should grant the governmental entity's

plea to the jurisdiction. *See State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961).

 By enacting the Texas Tort Claims Act, the legislature expressly waived the state's immunity to suits by injured claimants and consented to liability under specified circumstances. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025 (Vernon 1997). The Tort Claims Act constitutes a limited waiver of sovereign immunity. To invoke the trial court's jurisdiction, it is necessary to show the Act waives the state's immunity from suit.

In its sole issue, TxDOT contends the trial court erred by denying its plea to the jurisdiction based on sovereign immunity because the Garzas' petition does not state a viable claim for relief within a waiver of immunity afforded by the Texas Tort Claims Act. To determine the trial court's subject matter jurisdiction, we must decide whether the Garzas alleged a cause of action within the limited waiver provisions of the Tort Claims Act.

In their fourth amended petition, the Garzas alleged that their son's death was proximately caused by the careless, negligent, and reckless disregard of duties which [TxDOT] owed to the public in general and to [the Garzas and their son] in particular. Such disregard of duties consists of, but is not limited to, the following acts and/or omissions:

> Negligent failure to correct the hazardous absence, condition, or malfunction of traffic or road signs in the vicinity of Alamo Jr. High School within a reasonable time after notice of such absence, condition or malfunction.... However, sovereign immunity is waived by Defendant since Defendant received notice but failed to correct the absence, condition, or malfunction of a road sign within a reasonable time. Pursuant to Sec. 101.025 of the Texas Tort Claims Act,

*Waiver of Governmental Immunity; Permission to Sue,* (a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter; and (b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter. Therefore, the chapter applies since the responsible unit, to wit: Defendant, had notice of the absence, condition, or malfunction of the traffic or road sign and failed to correct that absence, condition, or malfunction within a reasonable time after notice.

In the petition, the Garzas also claimed the following sub-issues related to the main negligence issue:

(a) Prior to the incident, failure initially to place or install traffic or road signs in the vicinity of Alamo Jr. High School designating the area as a school zone;

(b) Prior to the incident, failure initially to place or install traffic or road signs in the vicinity of Alamo Jr. High School setting a reasonable motor-vehicle speed limit during those times of the day when students were in route to and from school;

(c) Failure to inspect the area bordering Alamo Jr. High School to determine whether appropriate traffic or road signs should be installed.

(d) Failure to design and/or construct a reasonably safe public school environment for the students of Alamo Jr. High School and in particular for the decedent ROLANDO GARZA.

These four sub-issues are exactly what we considered in 1994 in the Garzas' appeal of the summary judgment. *See Garza,* 878 S.W.2d at 673–76. We concluded in 1994 that summary judgment was proper as to these claims. We see no need to reconsider them in this interlocutory appeal.[2]

We will now review the Garzas' allegation that TxDOT's immunity was waived under section 101.060(a)(2) of the Tort Claims Act because of the condition of the speed limit sign. Section 101.060(a)(2) provides that the Act's waiver of immunity does not apply to the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(2) (Vernon 1997).

In their petition, the Garzas allege that although the accident that killed Rolando "occurred near a public school, no signs were posted in the area designating it a school zone and setting a reasonable speed limit during those times of the day when students were in route to and from school." The Garzas do not allege that the existing signs were removed or malfunctioned, but rather that the speed limit signs presented a "condition" that should have been corrected.

In *Sparkman v. Maxwell,* the supreme court defined "condition" as an intentional or inadvertent state of being and applied the definition to a traffic light that operat-

---

**2.** Collateral estoppel precludes a court from considering a specific issue that has been previously litigated by the same parties in another proceeding. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Repeatedly in its answers, TxDOT stated "Defendant specially excepts to Plaintiffs' ...

Amended Original Petition as the allegations therein are not limited to the single issue which was authorized for trial after remand." *See Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 802 (Tex.1994) (As an affirmative defense, collateral estoppel must be pleaded or it is waived.).

ed as intended, but endangered the public. *Sparkman v. Maxwell,* 519 S.W.2d 852, 857–58 (Tex.1975). In *City of San Antonio v. Schneider,* section 101.060(a)(2) was construed as: "(a)(2) pertains to a sign or warning device that was in place at one time but was subsequently removed, is malfunctioning or is endowed with some condition that should be corrected by the governmental unit." *City of San Antonio v. Schneider,* 787 S.W.2d 459, 468 (Tex. App.—San Antonio 1990, writ denied).

In their brief, the Garzas rely upon our previous opinion in *Garza v. State,* 878 S.W.2d at 675, for their assertion that TxDOT's immunity is waived because the 45 mph speed limit sign presented a condition. In our previous opinion, we stated:

> the speed limit sign operated as intended but actually endangered the public or was 'endowed with some condition that should be corrected by the governmental unit.' Under normal circumstances, a 45 mph speed limit sign functions properly and as intended by the State. However, under the existing special circumstances created by the recent construction of Alamo Junior High School, the 45 mph sign may mislead the public into believing that it is reasonable and safe to drive at this speed when in actuality it is an excessive speed for this area. Knowing this, the 45 mph speed limit sign near a school zone was a condition that should have been corrected by the State.

*Id.*

TxDOT argues that this language is *dicta* because this Court was deciding only the narrow issue of whether the State had met its summary judgment burden. TxDOT contends the discussion of the condition of the sign was unnecessary to the conclusion that "the State, which has the burden of proof, failed to adequately demonstrate that § 101.060(a)(2) is inapplicable as a matter of law." *Id.* at 676; *see*

*Boswell v. Pannell,* 107 Tex. 433, 180 S.W. 593, 597 (1915) (court's mere expression on point unnecessary to resolution of case does not create binding precedent). We disagree.

In determining whether there was a genuine issue of material fact, this Court looked at the evidence and concluded that the 45 mph sign presented a condition that should have been corrected. This conclusion was necessary to the appeal of the summary judgment and to the case itself, and it creates binding precedent on this Court.

Because we previously concluded "the 45 mph speed limit sign near a school zone was a condition that should have been corrected by the State," *Garza v. State,* 878 S.W.2d at 675, we hold TxDOT's immunity from suit has been waived. Accordingly, we overrule TxDOT's sole point of error.

We affirm the trial court's denial of TxDOT's plea to the jurisdiction.